## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **D'ALESSANDRO CHAVEZ-SANDOVAL; JANTRA PALMER, Individually, and as Representative of the Estate of Alan Kerber, Deceased; MARGARET SIMON and JOSEPH SIMON Individually and as Next Friends of Victoria Simon, Deceased, and G.L., a minor, and Representative of the Estate of Victoria Simon; KYLE RYKER; MICHAEL WALKER; DAEVION YOUNG; and ERIC RUSSELL,** | § § § § § § § § § § § § § § § § § § § | |
| *Plaintiffs*, | | **CIVIL ACTION NO: 4:24-cv-3072** |
| v. | | |
| **HARRIS COUNTY, TEXAS,** | | |
| *Defendant.* | | |

### PLAINTIFF CHAVEZ-SANDOVAL'S RESPONSE TO
### HARRIS COUNTY'S MOTION TO SEVER

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW Plaintiff D'Alessandro Chavez-Sandoval and files this his Response to Defendant Harris County's Motion to Sever (Dkt. No. 63), and in support thereof would respectfully show unto the Court as follows:

# TABLE OF CONTENTS

I.      SUMMARY OF THE ARGUMENT ................................................................. 1

II.     STATEMENT OF NATURE AND STAGE OF PROCEEDING ............................... 3

III.    STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ........................... 3

IV.     ARGUMENT AND AUTHORITIES ................................................................. 5

   A.  Using a Proper Joinder Analysis in Evaluating the Pleadings Establishes that the Requirements for the *Monell/*Conditions of Confinement Claim Cuts Against Severance. 5

   B.  Plaintiffs' Claims Arise Out of the Same Transaction or Occurrence or Series of Transactions or Occurrences. ................................................................. 9

   C.  Plaintiffs' Claims Contain Numerous Common Questions of Law and Fact. .......... 15

   D.  The Discretionary Factors of Judicial Economy, Unfair Prejudice, and Overlap in Witnesses and Evidence Weighs Against Severance. ........................................... 18

V.      OBJECTION TO DOCUMENTS ATTACHED TO DEFENDANT'S MOTION ....... 25

VI.     CONCLUSION ................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Afabor v. RaceTrac Petroleum, Inc.*,
    No. 3:05-CV-2255-P, 2006 U.S. Dist. LEXIS 33045 (N.D. Tex. May 15, 2006)............ passim

*Amalsi v. Schlumberger Tech. Corp.*,
    No. MO:20-CV-00056-DC-RCG, 2020 U.S. Dist. LEXIS 255809 (W.D. Tex. Dec. 2, 2020)
    ............................................................................................................... 16, 21, 23, 24

*Applewhite v. Reichhold Chems.*,
    67 F.3d 571 (5th Cir. 1995) ............................................................................... 4

*Aspen Tech., Inc. v. Kunt*,
    No. 4:10-cv-1127, 2011 U.S. Dist. LEXIS 1971 (S.D. Tex. Jan. 10, 2011)............... 16, 19, 21

*Backe v. City of Galveston*,
    2 F. Supp. 3d 988 (S.D. Tex. March 5, 2014)........................................................ 19

*Backe v. City of Galveston*,
    No. 10-CV-388, 2014 U.S. Dist. LEXIS 35632 (S.D. Tex. March 18, 2014)................... 21, 22

*Battison v. City of Electra*,
    No. 7:01-CV-037-R, 2001 U.S. Dist. LEXIS 6173 (N.D. Tex. May 8, 2001) ................. passim

*Carter v. Diamond URS Huntsville, LLC*,
    175 F. Supp. 3d 711 (S.D. Tex. 2016) ............................................................... passim

*Crompton Greaves, Ltd. v. Shippers Stevedoring, Co.*,
    776 F. Supp. 2d 375 (S.D. Tex. 2011) .................................................................. 24

*Dean v. City of Chicago*,
    No. 09 C 1190, 2009 U.S. Dist. LEXIS 78443 (N.D. Ill. Aug. 31, 2009)................................. 9

*Ettinoffe v. Sheikh*,
    No. 4:21-CV-02646, 2022 U.S. Dist. LEXIS 182151 (S.D. Tex. Oct. 4, 2022) .............. passim

*Glenewinkel v. Carvajal*,
    No. 3:20-CV-2256-B, 2020 U.S. Dist. LEXIS 167284 (N.D. Tex. Sept. 14, 2020) .......... 15, 21

*Green v. Padilla*,
    484 F. Supp. 3d 1098 (D.N.M. 2020) ...................................................................... 9

*McConnell v. Southwestern Bel Tel., L.P.*,
    No. 3:20-CV-01457, 2021 U.S. Dist. LEXIS 76436 (N.D. Tex. April 21, 2021)............ passim

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978)...................................................................................... passim

*Mosley v. Gen. Motors Corp.*,
    497 F.2d 1330 (8th Cir. 1974) ............................................................................. 9

*Pouncie v. Dlorah, Inc.*,
    No. 3:15-CV-0511-B, 2015 U.S. Dist. LEXIS 118233 (N.D. Tex. Sept. 4, 2015) .......... passim

*Ramirez v. Escajeda*,
  EP-17-CV-00193-DCG, 2021 U.S. Dist. LEXIS 157545 (W.D. Tex. Aug. 20, 2021) .............. 7

*Sanchez v. Schlumberger Tech. Corp.*,
  No. 2:17-CV-102, 2020 U.S. Dist. LEXIS 163011 (S.D. Tex. Sept. 7, 2020) .................. passim

*Thompson v. Capstone Logistics, LLC*,
  No. 4:15-CV-2464, 2018 U.S. Dist. LEXIS 12076 (S.D. Tex. Jan. 25, 2018) ............... 9, 15, 21

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966) ............................................................................................................. 4

*Wade v. Minyards Food Stores*,
  No. 3:03-CV-1403-H, 2003 U.S. Dist. LEXIS 20595 (N.D. Tex. Nov. 17, 2003) ............. 9, 15

*Wagner v. Harris County,*
   No. 4:23-CV-02886, 2024 U.S. Dist. LEXIS 68793 (S.D. Tex. April 16, 2024)............. passim

*Walch v. Adjutant Gen. Dep't*,
  533 F.3d 289 (5th Cir. 2008) .......................................................................................... 6

*Wulf v. BMW of N. Am., LLC*,
  No. 4:19-CV-0046, 2020 U.S. Dist. LEXIS 259196 (S.D. Tex. May 26, 2020)..................... 21

**Statutes**

42 U.S.C. § 1983 ....................................................................................................... 7, 14

**Rules**

Fed. R. Civ. P. 20 ................................................................................................... passim

## I.    SUMMARY OF THE ARGUMENT

1.      Plaintiffs represent 7 individuals who were catastrophically injured or killed within the Harris County Jail due to the unconstitutional policies, practices, training, and procedures of Harris County. Plaintiffs' First Amended Complaint covers 223 pages, 1,169 paragraphs, over 109 specific incidents of constitutional violations within the Jail with numerous admissions of the ongoing unconstitutional conditions by the Harris County Sheriff. Each Plaintiff has asserted the same constitutional violations based on the same prevalent policies and practices in the jail and the same wholly inadequate training policies and practices under *Monell* and conditions of confinement. Dkt. No. 13. Despite these extensive pleadings and the general requirements for Plaintiffs' claims, Defendant has now asserted seven identical Motions to Sever containing conclusory arguments that they would be prejudiced by the seven Plaintiffs being joined together in this case. Dkt. Nos. 63–69.

2.      In relation to nearly identical pleadings, Judge Ellison in *Wagner v. Harris County* denied Harris County's Motion to Sever 27 plaintiffs' claims in that case based on these same grounds. No. 4:23-CV-02886, 2024 U.S. Dist. LEXIS 68793 (S.D. Tex. April 16, 2024) (Ellison, J.) Judge Ellison held that the 27 plaintiffs had adequately alleged each requirement under Federal Rule of Civil Procedure 20  for permissive joinder and held that judicial economy was best served by keeping the cases together. *Id.* at *9–11. Judge Ellison specifically rejected Harris County's argument that they would suffer any prejudice by keeping the cases together. *Id.* at *9–10. Judge Ellison found that there would be significant overlap in discovery, legal determinations, and evidence. *Id.* at *10–11. Likewise, Plaintiff's Complaint includes the same allegations as the *Wagner* Plaintiffs with over a dozen additional incidents, and the Court should similarly deny Defendant's Motion to Sever.

3.    Plaintiff was standing in the Joint Processing Center (JPC) minding his own business when a detention officer began yelling at him across the room. When the officer approached, the officer grabbed Plaintiff's sweatshirt and pulled on Plaintiff. Plaintiff harmlessly shrugged to get his sweatshirt back and in retaliation the detention officer delivered a right-hook to Plaintiff's face followed by several other punches. This excessive force was joined in by several other officers who punched and kicked Plaintiff even after he was on the ground. Unlike Defendant's contention, Plaintiff only responded after he was struck which he has every right to do to defend himself from excessive force. Plaintiff filed this suit along with 6 other Plaintiffs who suffered similar injuries and even death in the Jail due to the same unconstitutional policies, practices, and deliberately indifferent unconstitutional training. Plaintiff brought *Monell* claims against Harris County under a condition of confinement theory and a failure to train, supervise, and discipline theory. Dkt. No. 13 at ¶¶ 1–61, 1057–64, 1079–83, 1104–1136.

4.    Defendant's Motion to Sever severally misconstrues and ignores Plaintiff's pleadings and the allegations asserted throughout the Complaint. Instead, Defendant's Motion is just multiple conclusory arguments strung together in an attempt to get the Court to make a decision on the merits instead of applying the proper joinder analysis which looks only at Plaintiff's allegations. Ultimately, the Court should deny Defendant's Motion to Sever because Defendant cannot carry their heavy burden to establish that joinder is improper.

5.    Defendant's Motion to Sever cannot overcome the strong Supreme Court policy in favor of joinder of the Plaintiffs' claims together. First, under a proper joinder analysis, the nature of a *Monell* claim relating to conditions of confinement and failure to train enhance the necessity of joinder due to the need for Plaintiff to present allegations of additional incidents, admissions, statistics, and violations to meet the requirements of those claims. Second, Plaintiff's claims arise

out of the same series of transactions or occurrences as each other Plaintiffs' claims. Third, Plaintiffs' claims contain a plethora of common questions of law and fact that must be decided by the fact finder after the close of discovery. Fourth, the discretionary factors of severance including settlement, judicial economy, prejudice, and overlapping proof strongly favor joinder. Because Plaintiffs can meet the requirements of Rule 20, permissive joinder "is at the option of the plaintiffs." *Wagner*, 2024 U.S. Dist. LEXIS 68793, at *5.

## II.    STATEMENT OF NATURE AND STAGE OF PROCEEDING

6.     On August 16, 2024, Plaintiff filed this lawsuit along with six other Plaintiffs who were either severely injured or killed within the Jail due to the Jail's unconstitutional policies. Dkt. No. 1. Plaintiffs identified 5 interrelated practices, policies, and customs that were expanded upon throughout the complaint. Dkt. No. 13 at ¶ 1058. Each of these policies can be looked at individually and collectively. *Id.* at ¶¶ 85–286, 1025–64. Plaintiffs also asserted the same failure to train, supervise, and discipline claims. *Id.* at ¶¶ 1125–57. Plaintiffs filed their First Amended Complaint on November 22, 2024. *Id*. Defendant filed this Motion to Sever along with 6 other nearly identical Motions to Sever on February 17, 2025. Dkt. Nos. 63–69 (the only difference amongst the 7 motions are parts of 4 paragraphs where Defendant just swapped the Plaintiff's specific facts. No difference in any of the arguments which means that Plaintiffs' Responses will be nearly identical as well.). No discovery has occurred outside of Plaintiffs' Initial Disclosures.

## III.    STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

7.     The issue raised by Defendant's Seven Identical Motions to Sever is whether Defendant can carry its heavy burden to show that Plaintiffs' claims do not meet the liberal Rule 20(a) permissive joinder standards and that judicial economy is better served by having seven cases with seven trials on these identical issues.

PLAINTIFF'S RESPONSE TO MOTION TO SEVER                                      3

8.     The standard of review for this type of motion to sever is based on the standards laid out under Federal Rule of Civil Procedure 20(a). Federal Rule of Civil Procedure 20(a) is the rule concerning the permissive joinder of multiple plaintiffs into a single lawsuit. Fed. R. Civ. P. 20(a). Plaintiffs are properly joined when (1) the right to relief asserted by each plaintiff arises out of the same transaction, occurrence, or series of transactions or occurrences; and (2) whether any question of law or fact common to all plaintiffs will arise in the action. *Id.* All plaintiffs do not need to be interested or involved in obtaining all of the relief demanded. *Id.*

9.     The United States Supreme Court has mandated that "the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). The common question and same transaction or occurrence prongs "are not rigid tests. . . they are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy." *Battison v. City of Electra,* No. 7:01-CV-037-R, 2001 U.S. Dist. LEXIS 6173, at *3–4 (N.D. Tex. May 8, 2001).

10.     The defendant bears the burden to show that the plaintiffs' claims do not meet Rule 20. *Sanchez v. Schlumberger Tech. Corp.*, No. 2:17-CV-102, 2020 U.S. Dist. LEXIS 163011, at *6–8 (S.D. Tex. Sept. 7, 2020) (Ramos, J.). "This is a high burden." *Id.* As long as both prongs of the Rule 20 analysis is met, "permissive joinder of plaintiffs . . . is at the option of the plaintiffs." *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 574 (5th Cir. 1995). The Court also has discretion to refuse joinder in the interest of avoiding delay or prejudice, to encourage settlement, and to ensure judicial economy but "[s]uch discretion should be exercised carefully." *Pouncie v. Dlorah, Inc.*, No. 3:15-CV-0511-B, 2015 U.S. Dist. LEXIS 118233, at *3 (N.D. Tex. Sept. 4, 2015).

## IV.    ARGUMENT AND AUTHORITIES

11.    Defendant's conclusory Motion to Sever attempts to impose an evidentiary determination to the joinder analysis by having the Court consider their one-sided and unproduced documentation. The joinder analysis only requires the Court to look at Plaintiffs' allegations to determine if they meet the two prongs of Rule 20(a). Additionally, Defendant makes numerous conclusory arguments that Plaintiffs' claims are completely unrelated. *See* Dkt. No. 63 at 1-18. However, Defendant's arguments are disingenuous as they completely ignore and misconstrue the plethora of allegations asserted by Plaintiffs showing that their claims arise out of the same series of transactions and occurrences.

12.    When the proper joinder analysis is used, the nature of the *Monell* claims provides strong support for joinder. Plaintiff's allegations sufficiently illustrate that all of Plaintiffs' claims arise from the same series of transactions and occurrences and have common questions of law and fact. Each of the discretionary factors also support joinder. Having one case to conduct discovery, handle all legal disputes, and having the same common questions answered by a single jury promotes judicial economy. Each of Harris County's arguments have already been rejected by Judge Ellison in the almost identical case involving 27 detainees compared to this cases 7 detainees. *Wagner*, 2024 U.S. Dist. LEXIS 68793, at *5–11. Defendant's Motion to Sever does not carry their heavy burden to overcome Plaintiffs' choice of joinder.

**A. Using a Proper Joinder Analysis in Evaluating the Pleadings Establishes that the Requirements for the *Monell*/Conditions of Confinement Claim Cuts Against Severance.**

13.    Under the joinder analysis, especially this early in the proceeding, the Court is to only look at the allegations of the Plaintiff to determine if those allegations meet the prongs of Rule 20. *Afabor v. RaceTrac Petroleum, Inc.*, No. 3:05-CV-2255-P, 2006 U.S. Dist. LEXIS 33045,

at *9–10 (N.D. Tex. May 15, 2006); *Battison*, 2001 U.S. Dist. LEXIS 6173, at *6; *Pouncie*, 2015 U.S. Dist. LEXIS 118233, at *5; *McConnell v. Southwestern Bel Tel., L.P.*, No. 3:20-CV-01457, 2021 U.S. Dist. LEXIS 76436, at *7 (N.D. Tex. April 21, 2021).

14.    In fact, under *Monell* and similar causes of action that require a showing of a pattern, practice, or policy, "For the permissive joinder of parties to be proper, a plaintiff need only **allege**, rather than prove, a pattern or practice of illegal conduct. . ." *Pouncie*, 2015 U.S. Dist. LEXIS 118233, at *5 (emphasis added). "[T]he relevant legal authority requires the plaintiffs to allege, not prove, a pattern of illegal conduct to merit the proper joinder of parties." *Afabor*, 2006 U.S. Dist. LEXIS 33045, at *9–10 (internal quotations and citations omitted).

15.    Defendant's Motion attempts to flip this analysis on its head by arguing that their unilateral documentation establishes that the understaffing and overcrowding policy does not exist. Dkt. No. 63 at 7–9. This argument is an end-run around the judicial process and asks the Court to make an evidentiary decision even though no discovery has been completed and the Motion does not meet the requirements for summary judgment. Defendant makes an unfounded argument that because Plaintiff's allegations discuss the understaffing and overcrowding of the Jail that the Court can consider the Jail's unproduced staffing documents. *Id.* at 8. This argument is incorrect as Plaintiff did not refer and incorporate the staffing documents by merely mentioning staffing. This argument is unsupported by the case law Defendant cited as the law requires that the specific documents have to be referenced in the Complaint, not just any documents that pertain to the allegations in the Complaint. *See Walch v. Adjutant Gen. Dep't*, 533 F.3d 289, 293–94 (5th Cir. 2008). Otherwise, a defendant would always be able to attach documents to their motions and claim that they were referenced in the complaint. Additionally, Plaintiffs cannot agree to the authenticity of the documents especially in light of Plaintiffs allegations and the TCJS findings

that staffing documents from Harris County are unreliable. Dkt. No. 13 at ¶¶ 27–286. These documents do not constitute public records as they are not available to the public and are not inherently reliable. Therefore, Plaintiff objects to the consideration of any of Defendant's exhibits.

16.    The proper joinder analysis is especially important in relation to Plaintiffs' *Monell* claims for conditions of confinement and failure to train under 42 U.S.C. § 1983. To establish both of these types of *Monell* § 1983 claims, Plaintiffs must establish a common policy through widespread patterns and practices which requires allegations and proof of sufficient, similar and specific incidents. *Ettinoffe v. Sheikh*, No. 4:21-CV-02646, 2022 U.S. Dist. LEXIS 182151, at *12–15 (S.D. Tex. Oct. 4, 2022) (Ellison, J.). This analysis requires several questions of law and fact including whether or not the Plaintiff has alleged sufficient incidents, similar incidents, and whether or not the evidence establishes the existence of the policy. *See Id.* Unlike Defendant's argument, the incidents do not have to be identical or concern the same exact conduct but can be incidents that point to the existence of the policy itself. *Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at *11–13; *Ramirez v. Escajeda*, EP-17-CV-00193-DCG, 2021 U.S. Dist. LEXIS 157545, at *133–34 (W.D. Tex. Aug. 20, 2021) *reversed on other grounds* 44 F.4th 287 (5th Cir. Aug. 10, 2022). These questions are not resolved in the joinder analysis. *See supra.*

17.    Thus, under *Monell*, the Plaintiffs' allegations of common policies, practices, and similar incidents, provides greater weight for permitting joinder. The fact finder will have to make a determination on each similar incident if it points to the existence of the policy and will have to decide if the policymaker was aware of the policy and failure to train. *See supra.* A Motion to Sever is not the proper mechanism for challenging the evidentiary basis of the allegations; instead, Plaintiffs allegations are more than sufficient to state each prong of the Rule 20 analysis.

18.    One of the common policies amongst the Plaintiffs' conditions of confinement claim is the policy of understaffing and overcrowding the Jail as well as the failure to train and supervise (Defendant does not challenge that the failure to train and supervise is common amongst the Plaintiffs). Defendant makes a conclusory argument that the Jail was not understaffed during the incidents because on paper the Jail met the arbitrary ratio of minimum jail standards. Dkt. No. 63 at 7-9. This argument ignores Plaintiffs' allegations that specifically identify the TCJS findings, Sheriff Gonzalez's own admissions, and the statements by multiple employees that the Jail is seriously understaffed and overcrowded. Dkt. No. 13 at ¶¶ 123–137, 160–286, 1025–1056. The fact that a document states that the Jail assigned staff to a floor does not mean that the staff member was actually on the floor, that the staff is sufficiently numerous to complete the functions to provide for the safety of the detainees, that the individuals are ones properly trained to be in those positions, or that enough staff was present on the floor to control the detainees. As Sheriff Gonzalez admitted as alleged in the Complaint, the state staffing ratio is "not always sufficient. . . because minimum isn't always going to be what we really need. . ." *Id.* at ¶ 135.

19.    Plaintiffs alleged that the understaffing and overpopulation led to officers being overworked (i.e. mandatory overtime), led to the staff making poor choices, and prevented them from doing their jobs timely and effectively. *Id.* at ¶¶ 85–286, 1025–1157. This allegation of the interrelated nature between the policies is supported by Sheriff Gonzalez's admissions, TCJS and DOJ findings, and by Jail employees' statements. *Id.* Thus, a determination on whether the Jail has a policy of understaffing and overcrowding is better left to the jury and not a motion to sever because Plaintiffs' allegations "alone suffices to meet Rule 20(a)'s" requirements. *Battison*, 2001 U.S. Dist. LEXIS 6173, at *6; *Pouncie*, 2015 U.S. Dist. LEXIS 118233, at *5.

PLAINTIFF'S RESPONSE TO MOTION TO SEVER                                          8

**B. Plaintiffs' Claims Arise Out of the Same Transaction or Occurrence or Series of Transactions or Occurrences.**

20.     Plaintiff's claims arise out of the same series of transactions or occurrences as each other Plaintiffs' claims. The Fifth Circuit has not adopted a per se test on what constitutes the same transaction or occurrence. However, the district courts within the Fifth Circuit including this Court all follow the "some connection" or "logical relationship" test adopted by the Eighth Circuit in *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333–34 (8th Cir. 1974). *Sanchez*, 2020 U.S. Dist. LEXIS 163011, at *6; *Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 727 (S.D. Tex. 2016) (Harmon, J.). Under this test, absolute identity of events is not required. *Mosley*, 497 F.2d at 1333. The proper analysis is to look at the similarities not the differences because proper joinder is found even when individual issues may predominate because predomination is not pertinent to joinder. *See Sanchez*, 2020 U.S. Dist. LEXIS 163011, at *9–10.

21.     To find a logical relationship, the Court needs only determine if there will be some overlap in proof or duplication of testimony among the claims. *Id.* at *7. In cases where a central element of a claim is a common policy or failure to train, one shortcut for determining both prongs of the Rule 20 permissive joinder analysis is whether Plaintiffs *allege* that their claims arise out of a common policy or practice. *Carter*, 175 F. Supp. 3d at 729–30; *Battison*, 2001 U.S. Dist. LEXIS 6173, at *5–6; *McConnell*, 2021 U.S. Dist. LEXIS 76436, at *7–8; *Wade v. Minyards Food Stores*, No. 3:03-CV-1403-H, 2003 U.S. Dist. LEXIS 20595, at *3–5 (N.D. Tex. Nov. 17, 2003); *Pouncie*, 2015 U.S. Dist. LEXIS 118233, at *5; *Afabor*, 2006 U.S. Dist. LEXIS 33045, at *9–10; *Sanchez*, 2020 U.S. Dist. LEXIS 163011, at *7–10; *Thompson v. Capstone Logistics, LLC*, No. 4:15-CV-2464, 2018 U.S. Dist. LEXIS 12076, at *18–19 (S.D. Tex. Jan. 25, 2018) (Harmon, J.); *Green v. Padilla*, 484 F. Supp. 3d 1098, 1150–51 (D.N.M. 2020); *Dean v. City of Chicago*, No. 09 C 1190, 2009 U.S. Dist. LEXIS 78443, at *2 (N.D. Ill. Aug. 31, 2009).

22.    "Claims arise out of the same transactions or occurrences when the complaint alleges a defendant's pattern or policy of behavior, regardless of differences amongst the plaintiffs' individual claims. In fact, joinder is appropriate based on the plaintiffs' proper '*allegation* of a company-wide policy,' 'not the *existence* of a company-wide policy.'" *McConnell*, 2021 U.S. Dist. LEXIS 76436, at *7 (quoting *Afabor*, 2006 U.S. Dist. LEXIS 33045, at *3) (emphasis in the original); *See Battison*, 2001 U.S. Dist. LEXIS 6173, at *5–7; *Carter*, 175 F. Supp. 3d at 729–30; *see also Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at *12–15.

23.    Because Plaintiffs' have alleged a common policy, pattern, and practice, Plaintiffs' claims all arise from the same series of transactions and occurrences and satisfy the first prong of Rule 20(a). *See* cases cited *supra* at ¶¶ 21–22. The underlying theme to each Plaintiffs' claim is that they suffered constitutional violations that resulted in their injuries or death within the Harris County Jail based on the same policies, practices, and procedures implemented by the same policymaker, Sheriff Gonzalez. Dkt. No. 13 at ¶¶ at 1–94, 1057–1157. These allegations alone are sufficient to show that Plaintiffs' claims are logically related. Additionally, Plaintiffs will have significant overlap in witnesses and proof. For example, each Plaintiff will have testimony from Sheriff Gonzalez on his knowledge of similar incidents, the policies and practices of the Jail, the training of officers, and other similar topics. *Id.* at ¶¶ 85–1059. Plaintiffs will also evaluate the same policies, standard operating procedures, and training materials from Harris County as well as the same TCJS reports, Serious Incident Reports, DOJ Report, and other investigations. *Id.* The testimony of each officer will also provide great insight into the pervasive unconstitutional acts within the Jail which will support each other Plaintiffs' claims. Plaintiffs will also have an overlap in jail condition experts. Each of these in addition to the same policies, show a logical relationship between Plaintiffs' claims. *See* cases cited *supra* at ¶¶ 21-22.

PLAINTIFF'S RESPONSE TO MOTION TO SEVER                    10

24.     Defendant's only argument that the claims do not arise from the same transaction or series of transactions or occurrences is that each Plaintiffs' incident occurred on a different day in a different part of the jail. Dkt. No. 63 at 9–10. These small differences do not carry Defendant's heavy burden to establish that severance is necessary. The similarities between the cases easily meet the Supreme Court's broad policy in favor of joinder. Additionally, the "Fifth Circuit has never found that location is dispositive for determining whether joinder is proper" which is even more pertinent here when every Plaintiff was within the Jail and the custody of Defendant. *McConnell*, 2021 U.S. Dist. LEXIS 76436, at *9.

25.     For example, each case shares the common policy of understaffing and overcrowding. Dkt. No. 13 at ¶¶ 27–94, 1057–1124. Defendant makes a conclusory argument that Plaintiff does not provide specific facts on how this policy was connected to the claims. Dkt. No. 63 at 1-10. While this argument is demonstrably false, it also attempts to convert the joinder analysis into a motion to dismiss standard. The Complaint provides more than enough factual allegations on how the understaffing and overcrowding policy exists and how it exacerbates each of the other policies that caused Plaintiff's injuries.

26.     The Complaint both directly and through the prior incidents, Sheriff admissions, and agency findings identified that the overpopulation and understaffing increased violence between officers and detainees because the officers made decisions too rashly to try to get a quick result, they could not think correctly, they did not have enough staff to conduct operations safely and effectively, and it caused mental and physical stress which resulted in an environment that led to physical altercations. Dkt. No. 13 at ¶¶ 27–286, 1025–1124. The Complaint also identified that the overpopulation and understaffing impeded the officers' ability to conduct proper observations, provide medical care, and increased the violence amongst detainees. *See e.g. Id.* at ¶¶ 218–19, 91,

PLAINTIFF'S RESPONSE TO MOTION TO SEVER                                    11

1058. Plaintiffs have more than sufficiently identified the existence of this policy especially when Sheriff Gonzalez, the TCJS, and the DOJ all agreed that the Jail is overpopulated and understaffed and that this policy has an impact on each of the other policies identified in the Complaint. *See e.g. Id.* at ¶¶ 97–286, 1025–56.

27.     Plaintiff Chavez-Sandoval's claims also support the allegation that this policy of understaffing and overcrowding was a moving force in his injuries and in the exacerbation of the excessive use of force by the officers. Specifically, as can be seen in the video, Plaintiff was minding his own business when an officer came over and grabbed him by the sweater. *Id.* at ¶¶ 53–61. Plaintiff simply and harmlessly pulled away which resulted in the officer immediately delivering multiple blows to Plaintiff's head with other officers eventually joining in. *Id.* Plaintiff makes the specific allegation that the understaffing and overcrowding of the jail was the moving force for the very reasons identified above. *Id.* at ¶¶ 53–61, 85–286, 1057–64, 1079–83. This condition of the jail causes officers to react with violence to the slightest inconvenience, leads to them making incorrect decisions, and increases the violence by officers against detainees. Similarly, this same allegation also applies to Plaintiff Young who was also beaten needlessly by officers. *See Id.* at ¶¶ 69–75, 1089–93.

28.     This same policy applies to the other Plaintiffs as well. For example, Plaintiffs Ryker and Russell were subjected to beatings by other detainees. *Id.* at ¶¶ 45–52, 76–84, 1094–1103. Plaintiffs have alleged that the understaffing and overpopulation has discouraged officers from interfering in detainee assaults, has increased the violence amongst detainees, impeded the officers ability to control the population, and impeded the officers' ability to observe. *Id.* at ¶¶ 45–52, 76–286, 1054–56, 1094–1103. For Plaintiff Kerber, this policy applies because the officers do not have enough time to do proper observations because there are not enough staff and too many

detainees so the staff are rushing through observations and not doing their duties including classifying detainees properly. *Id.* at ¶¶ 36–44, 85–286, 1054–56, 1074–78. For Plaintiffs Simon and Walker, similarly this policy impedes officers' ability to observe, impedes the providing of proper medical care, and impedes the ability to respond to medical needs. *Id.* at ¶¶ 27–35, 62–68, 85–286, 1054–56, 1069–73, 1084–88. Each of the above were items that the TCJS, DOJ, and Sheriff Gonzalez all identified relating to overpopulation and understaffing of the jail. *Id.* at ¶¶ 85–286. For example, in the December 2021 TCJS report, TCJS specifically found that Harris County were utilizing the wrong personnel to meet the staffing ratio on paper but that this practice was impeding the ability to perform regular duties and provide a safe and secure environment and possibly "contributed to an increase in inmate on inmate assaults and inmate on staff assaults." *Id.* at ¶ 218–19. Thus, all evidence pointing to this policy is pertinent to each Plaintiffs' claim.

29.    Defendant failed to address the fact that each Plaintiff has also asserted the same training and supervision failures in their failure to train and supervise claim. This also constitutes a basis for finding a common transaction. *Wagner*, 2024 U.S. Dist. LEXIS 68793, at *6. Additionally, for both claims, Plaintiffs each rely on the same materials to show a policy including over a dozen TCJS notices of non-compliance, TCJS meetings, the 2009 DOJ Report, over 70 individuals with similar injuries and incidents, and statistics. Dkt. No. 13. This testimony and evidence will be critical to Plaintiff's claims and will require the fact finder to determine if they establish the existence of policies and deliberate indifference on the part of Harris County supporting a finding of a common transaction or occurrence. *See* cases cited *supra* at ¶¶ 21–22. Defendant's focus on generalized differences cannot carry its heavy burden to illustrate misjoinder because the Court is to look at the similarities. *Sanchez*, 2020 U.S. Dist. LEXIS 163011, at *6–10.

PLAINTIFF'S RESPONSE TO MOTION TO SEVER                                    13

30.      In the identical case before Judge Ellison where 27 detainees filed suit against Harris County for the same policies and practices asserted by Plaintiffs, Judge Ellison analyzed the same arguments raised by Harris County in their Motion to Sever. *Wagner*, 2024 U.S. Dist. LEXIS 68793, at *1–10. Judge Ellison held that "Plaintiffs' allegations all arise from the same set of policies of the Harris County Jail" including the practice of overcrowding and understaffing the Jail and failure to train and supervise. *Id.* at *6. "Because Plaintiffs' injuries were ***allegedly*** caused by a common set of policies or practices, the Court finds that Plaintiffs satisfy the same transaction test." *Id.* at *7 (emphasis added).

31.      In *Carter*¸ two plaintiffs who were subjected to separate arrests, made on different days, at different locations, by different officers asserted multiple claims against individual officers and the City of Huntsville. 175 F. Supp. 3d at 727–29. The claims against the City of Huntsville were pursuant to 42 U.S.C. § 1983 whereby the plaintiffs' claimed that they were subjected to a custom or policy of the City for allowing excessive force and unlawful arrests. *Id.* The Court denied the City's motion to sever specifically finding that Plaintiffs' allegations of a common policy under a § 1983 claim was sufficient to establish both the transaction and occurrence prong and the common question of law and fact prong. *Id.* at 729–30. The Court noted that joinder was proper because the plaintiffs were specifically joining together to meet the policy and custom requirements of § 1983 along with establishing the policymaker's knowledge of the policies and whether they were a moving force in the violations. *Id.* at *9.

32.      In *Battison*, multiple plaintiffs asserted claims against numerous police officers and the City of Electra itself for violations of their constitutional rights under § 1983. 2001 U.S. Dist. LEXIS 6173, at *1–2. The Court denied the City's motion to sever. *Id.* The Court specifically held, "Here, the Plaintiffs allege that the City of Electra has engaged in a pattern or practice of violating

PLAINTIFF'S RESPONSE TO MOTION TO SEVER                                    14

constitutional rights of its citizens by engaging in negligent hiring, supervision, and retention. This allegation alone suffices to meet Rule 20(a)'s common transaction or occurrence requirement." *Id.* at *6. The Court went further and held that these same allegations were sufficient to establish the common question of law or fact prong. *Id.*

33.    Numerous courts in the Fifth Circuit have addressed similar claims in the context of employment discrimination and the Fair Labor Standards Act and held that the common policies and practices of the employers constituted a sufficient nexus to show both prongs of Rule 20. *See e.g. McConnell*, 2021 U.S. Dist. Lexis 76436, at *6–9; *Wade*, 2003 U.S. Dist. LEXIS 20595, at *3–5; *Pouncie*, 2015 U.S. Dist. LEXIS 118233, at *5; *Afabor,* 2006 U.S. Dist. LEXIS 33045, at *9–10; *Thompson*, 2018 U.S. Dist. LEXIS 12076, at *18–19; *Sanchez*, 2020 U.S. Dist. LEXIS 163011, at *7–12. In light of the strong case law and the extensive factual allegations of the Complaint, Plaintiffs' claims meet the transaction and occurrence prong of Rule 20.

**C.  Plaintiffs' Claims Contain Numerous Common Questions of Law and Fact.**

34.    The second prong of the Rule 20 analysis is easier to establish than the first prong because Plaintiffs need only **one** common question. *Carter*, 175 F. Supp. 3d at 727. This Court along with other Fifth Circuit district courts have held that this prong is established when the plaintiffs are challenging a policy, pattern, or practice because the same questions will have to be answered for all plaintiffs to determine if those policies, patterns, or practices exist. *Pouncie*, 2015 U.S. Dist. LEXIS 118233, at *7; *Thompson*, 2018 U.S. Dist. LEXIS 12076, at *19; *Afabor*, 2006 U.S. Dist. LEXIS 33045, at *11–12; *Glenewinkel v. Carvajal*, No. 3:20-CV-2256-B, 2020 U.S. Dist. LEXIS 167284, at *13 (N.D. Tex. Sept. 14, 2020); *Carter*, 175 F. Supp. 3d at 730; *McConnell*, 2021 U.S. Dist. LEXIS 76436, at *9; *Battison*, 2001 U.S. Dist. LEXIS 6173, at *6.

35.     Here, Plaintiffs first cause of action is based on five distinct policies which taken singularly and together caused their constitutional violations. Dkt. No. 13 at ¶¶ 27–94, 1057–1103. For each of these policies, it is a common question of law and fact of whether those policies exist. *See* cases cited *supra* at ¶ 34. For each Plaintiffs' claim, the jury will have to consider each policy and answer the question whether the policy existed. It is better that one jury answers this question; rather than 7 juries answering this question and potentially leading to incongruous results. *Aspen Tech., Inc. v. Kunt*, No. 4:10-cv-1127, 2011 U.S. Dist. LEXIS 1971, at *7 (S.D. Tex. Jan. 10, 2011) (Ellison, J.); *Amalsi v. Schlumberger Tech. Corp.*, No. MO:20-CV-00056-DC-RCG, 2020 U.S. Dist. LEXIS 255809, at *9–10 (W.D. Tex. Dec. 2, 2020); *Sanchez*, 2020 U.S. Dist. LEXIS 163011, at *8, 12; *see also* cases cited *supra* at ¶ 34.

36.     For each policy, the law requires consideration of similar and specific incidents which establish that policy. *Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at *12–15. Each Plaintiff points to over 70 individual incidents which also includes every other Plaintiff along with additional evidence of the existence of the policy through the same TCJS reports, the same Sheriff Gonzalez admissions, the same 2009 DOJ report, and the statistics identifying the drastic disparity in the conditions of the jail compared with the rest of the state which comes to over 90 other comparators and evidence of policies and deliberate indifference. Dkt. No. 13 at ¶¶ 12–1059. Each Plaintiff has alleged with sufficient factual detail that each of these incidents indicate the existence of each policy. Thus, each incident and piece of evidence constitutes a common question of law and fact whether those incidents were similar or specific enough and whether they illustrate a condition or not. It is better that one jury makes these determinations rather than 7 different juries.

37.     Plaintiffs have also alleged inadequate training policies on behalf of Harris County. Dkt. No. 13 at ¶¶ 85–1056, 1125–1157. These claims pose numerous common questions of law

and fact including whether the training policy was adequate and whether Harris County implemented these policies with deliberate indifference. The deliberate indifference question would again require consideration of all 90-plus similar incidents to show the deliberate indifference making an additional 90-plus common questions.

38.    Another common question of law and fact would be the common policymaker for each Plaintiffs' claim. Sheriff Gonzalez will be the same policymaker for each Plaintiffs' claim. Dkt. No. 13 at ¶¶ 27–1157. Sheriff Gonzalez will be a witness that will be used for each Plaintiffs' claim favoring joinder. *Sanchez*, 2020 U.S. Dist. LEXIS 163011, at *6.

39.    When considering the same argument with nearly identical pleadings, Judge Ellison held that for the 27 detainees, "Plaintiffs' claims present numerous questions of law and fact." *Wagner*, 2024 U.S. Dist. LEXIS 68793, at *7. "For example, Plaintiffs' *Monell* claims require determining whether the alleged incidents are sufficiently similar to establish a policy or practice, whether the incidents suffice to show deliberate indifference, and whether Harris County's training of Jail employees was inadequate." *Id.* at *7–8. The Court rejected Harris County's argument concerning the individualized differences and held that "the presence of individual issues is non-dispositive" because "the commonality test is satisfied by the presence of a *single* common question of law or fact." *Id.* at *8–9 (emphasis in original).

40.    Defendant's argument concerning the common question analysis spends half of its argument making conclusory statements that Plaintiff's claims have different questions from the other Plaintiffs and then spends the other half discussing the potential prejudice and discovery in the case. Dkt. No. 63 at 10–12. The latter half of that argument pertains to the judicial economy factors and not the common question analysis and will be addressed below. Defendant's conclusory arguments concerning the alleged differences between the Plaintiffs' claims is

PLAINTIFF'S RESPONSE TO MOTION TO SEVER                                          17

insufficient to show that this prong of the Rule 20 analysis has not been met. For example, Defendant makes a conclusory statement that the comparators between the Plaintiffs will have to be different. *Id.* at 11. Defendant provides no support for this statement. In fact, Plaintiffs allegations show a significant overlap in the comparators mentioned in the case as each one provides insight into the existence of the policies and conditions of the Jail that led to Plaintiffs' injuries. For example, each of the TCJS reports, the DOJ Report, and Sheriff Gonzalez's own admissions illustrate each policy and apply equally to each Plaintiff. Dkt. No. 13 at ¶¶ 85–286. The case of Jacoby Pillow is another example of how the comparators apply to each case. Mr. Pillow was subjected to excessive force by numerous officers, did not receive proper medical evaluation, and then was dragged into a cell and left there without proper observation until he was found dead. *Id.* at ¶¶ 288–99. The jury will get to consider this evidence for each Plaintiff and make the determination if they were similar and show the policies, practices and procedures. Defendant's arguments are unavailing in carrying their burden to show no common questions of law or fact between Plaintiffs' claims. The Court should deny Defendant's Motion on this ground.

**D. The Discretionary Factors of Judicial Economy, Unfair Prejudice, and Overlap in Witnesses and Evidence Weighs Against Severance.**

41.     Although Defendant uses three subheadings for its arguments on judicial economy and prejudice, Defendant's arguments concerning the discretionary factors overlap and are intertwined in each of their sections. *See* Dkt. No. 13 at 10–18. As such, Plaintiff will address each of the factors including judicial economy, settlement, prejudice, and overlapping evidence in this section instead of trying to mirror Defendant's organization.

42.     Although the Court has discretion on severing the case, the Court should balance "convenience and judicial economy against the danger of prejudice and juror confusion." *Afabor*, 2006 U.S. Dist. LEXIS 33045, at *12. As this Court has recognized, an additional concern is the

"right of a litigant to have only one jury pass on a common issue of fact" which applies equally well to having one jury pass on the common questions of fact amongst Plaintiffs' claims. *Aspen Tech*, 2011 U.S. Dist. LEXIS 1971, at *6–7, 21 (internal quotations omitted). Separating the case into 7 different cases automatically increases the "costs and commitment of judicial resources to [7] separate cases, and consequently [7] trials" which does not enhance judicial economy. *Id.* at *15–16.

43.     *Settlement.* Although Defendant includes the discretionary factor of "settlement" in its heading, Defendant does not make any arguments that severance would encourage settlement. *See* Dkt. No. 63 at 12. In fact, joinder encourages settlement because in *Monell* claims the presence of multiple Plaintiffs asserting similar claims and policies provides greater weight to the *Monell* claims. *See Backe v. City of Galveston*, 2 F. Supp. 3d 988, 1002 (S.D. Tex. March 5, 2014) (Ellison, J.). Additionally, this case has already been litigating for over seven months and a single discovery with common information for all Plaintiffs and single motion practice will allow the case to reach trial quicker which would encourage settlement. Splitting the case up, would result in the discovery having to be duplicated and inevitably disputes about what information is being produced in one case that is also relevant but is not being produced in another case. For the common depositions like Sheriff Gonzalez, it would require working with the parties to get seven different depositions set up which will drag out all of the cases longer instead of doing it one time in the joined case. Ultimately, the prospects of settlement weighs in favor of joinder not severance.

44.     *Judicial Economy.* Defendant attempts to argue that judicial economy favors splitting the case up because a joined case would result in too much discovery, extensive motion practice, and trial confusion. Dkt. No. 63 at 12–13. Defendant provides no support for this argument. Instead, Defendant is pointing to their own practice of filing separate motions to dismiss

and motions to sever and stating that their practice will continue. *Id.* This argument does not explain how separate cases would help with that problem. Additionally, this practice is a mere fabrication of an issue as can be seen by comparing the Motions to Sever as they are identical in all aspects except for some portions of four paragraphs where they switched out the Plaintiffs' facts. *Compare* Dkt. Nos. 63–69. Defendant could have easily put each of these in a single Motion to Sever like the other Harris County attorneys did in *Wagner*.

45.    Defendant's conclusory argument that the scope of discovery would be broader in a single case than it would in severed cases is unsupported and misconstrues the discovery and requirements of asserting a *Monell* claim. Dkt. No. 63 at 12. Because of the requirement of proving similar and specific prior incidents, each Plaintiff would be required to conduct discovery on each of the over 90 similar incidents and locating additional similar incidents in conjunction with discovery of each of Harris County's training policies and procedures, standard operating procedures, directives, communications concerning conditions of the jail, TCJS investigations, DOJ investigations, serious incident reports, etc. *See Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at *12–15. Severance would require over 90 duplicative sets of discovery in 7 different cases.

46.    Plaintiffs also anticipate taking Sheriff Gonzalez's testimony and a corporate representative's testimony. Severance would require a waste of judicial resources and undue delay in the case because Sheriff Gonzalez and the corporate representative would have their same deposition taken 7 different times. *Sanchez*, 2020 U.S. Dist. LEXIS 163011, at *8, 12. Plaintiffs anticipate having the same experts opine on the jail conditions for all seven Plaintiffs, and anticipate having depositions of the high level supervisors who run the jail which apply equally to all claims. With Harris County's history of being uncooperative in discovery, each case will likely have discovery disputes concerning objections and document productions which would require the

Court to rule on the same discovery motions in 7 different cases if severance was permitted. Plaintiff has already requested to inspect the Jail which is easier to do one time.

47.     When faced with similar arguments, numerous courts have held that severance is unwarranted as the defendant is not unduly prejudiced and judicial economy is preserved through having one lawsuit. *Id.; Aspen Tech*, 2011 U.S. Dist. LEXIS 1971, at *6–7, 21; *Pouncie*, 2015 U.S. Dist. LEXIS 118233, at *9; *Afabor*, 2006 U.S. Dist. LEXIS 33045, at *12–13; *Amalsi*, 2020 U.S. Dist. LEXIS 255809, at *9–10; *Battison*, 2001 U.S. Dist. LEXIS 6173, at *6–7; *McConnell*, 2021 U.S. Dist. LEXIS 76436, at *9–10; *Glenewinkel*, 2020 U.S. Dist. 167284, at *13; *Wulf v. BMW of N. Am., LLC*, No. 4:19-CV-0046, 2020 U.S. Dist. LEXIS 259196, at *10 (S.D. Tex. May 26, 2020) (Bennett, J.); *Thompson*, 2018 U.S. Dist. LEXIS 12076, at *18–19; *Backe v. City of Galveston*, No. 10-CV-388, 2014 U.S. Dist. LEXIS 35632, at *5–6 (S.D. Tex. March 18, 2014) (Ellison, J.).

48.     As shown above, Plaintiffs' claims assert multiple common policies that require a showing of a pattern and practice of similar incidents. For example, each Plaintiff makes a claim that Harris County has a policy of understaffing and overcrowding along with failing to properly observe, monitor, and supervise detainees and officers in conjunction with a lack of training which all leads to officer use of force, lack of medical care, additional detainee violence, and the injuries and death suffered by Plaintiffs. Dkt. No. 13 at ¶¶ 27–1157. This claim would require the jury to determine if Harris County has this policy for each individual Plaintiff while also considering if all 90-plus incidents alleged to show this policy were similar and specific. *See Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at *12–15. Because these grounds establish common questions and the same policies, it would be improper to divide these cases up to have 7 different juries hear the same evidence on all 90-plus incidents and then potentially answer those common questions in conflicting manners. *See* cases cited *supra* at ¶ 47.

PLAINTIFF'S RESPONSE TO MOTION TO SEVER                     21

49.    Defendant's unsupported argument that presenting Plaintiffs' claims in one trial will cause juror confusion again fails to address the requirements of *Monell* that requires the evidence of similar incidents. Dkt. No. 63 at 11–15. Defendant's argument does not give the jury credit in that they are more than capable of considering the evidence and applying it properly in accordance with the Court's instructions. *Backe*, 2014 U.S. Dist. LEXIS 35632, at *5.

50.    In *Wagner*, Judge Ellison was faced with these exact same arguments by Harris County in their Motion to Sever the 27 plaintiffs which is significantly more than the 7 before this Court. 2024 U.S. Dist. LEXIS 68793, at *1–10. Judge Ellison held:

> Defendant argues that judicial economy cuts in favor of severance because each claim will require individualized factual determinations based on different witnesses and documentary proof. To the contrary, the Court finds that allowing the parties to proceed in the same suit will serve judicial economy, as it will permit the Court to assess the legal viability of Plaintiffs' claims once instead of 27 times. Further, if the claims were severed, duplicative evidence of the alleged failure to train and unconstitutional practices would have to be presented at 27 separate trials. Additionally, discovery will be vastly simplified, as Harris County will have to respond to only one series of discovery requests pertaining to its policies and training programs rather than 27.

*Id.* at *10–11. Similarly, the Court should hold that judicial economy is preserved by keeping the cases joined and denying severance.

51.    ***Undue Prejudice.*** In relation to prejudice, Defendant essentially argues that it will be prejudiced by the jury hearing all of the similar incidents of wrongdoing in the Jail and that it will cause the jury to be confused. Dkt. No. 63 at 13–15. Defendant's argument that having all 7 claims heard at once would cause jury confusion or undue prejudice is unfounded because the very nature of Plaintiffs' claims under *Monell* requires the jury to consider all 7 claims together in addition to the 90-plus other similar incidents in the Complaint and any additional incidents identified in discovery. Dkt. No. 13; *See Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at *12–15; *Wagner*, 2024 U.S. Dist. LEXIS 68793, at *9–10.

52. For example, Plaintiff Chavez and Plaintiff Young will each present comparators on uses of force in the Jail while also presenting the comparators that illustrate the overcrowding and understaffing of the Jail, the failure to train and supervise, the lack of discipline in the Jail and the comparators that illustrate the failure to observe and monitor. Dkt. No. 13. Each of the other Plaintiffs will likewise call on each of these same comparators to illustrate the common policies and lack of training. *Id. Monell* requires sufficient comparators to show evidence of the existence of a policy, so the more evidence available and presented the far stronger the case is. Plaintiffs have attempted to meet that burden in their pleadings, and just because Harris County does not want the jury to see the numerous incidents of wrongdoing that illustrate the rampant disregard for human life in their jail, *Monell* expressly requires it and cannot form the basis of prejudice to support severance. *See Wagner*, 2024 U.S. Dist. LEXIS 68793, at *9–10.

53. Judge Ellison in addressing this same argument held:

> This argument [prejudice and jury confusion] is unavailing…Contrary to Defendant's assertions, evidence of similar incidents is not 'irrelevant,' but rather is crucial to meeting the Fifth Circuit's demanding standard for municipal liability. Therefore, regardless of whether or not Plaintiffs' claims are severed, evidence of similar incidents will be before the jury. Any potential prejudice to Defendant resulting from such evidence cannot be a basis for severance.

*Wagner*, 2024 U.S. Dist. LEXIS 68793, at *9–10; *see also Afabor*, 2006 U.S. Dist. LEXIS 33045 at *12–13; *Amalsi*, 2020 U.S. Dist. LEXIS 255809, at *9–10. Likewise, Harris County has not carried its burden to establish that it would suffer prejudice sufficient to warrant severance.

54. ***Overlap of Witnesses and Proof.*** Throughout this Response, Plaintiff has identified many items of overlapping proof and witnesses (i.e. Sheriff Gonzalez, corporate representative, training policies, TCJS reports, DOJ report, comparators, etc.). As recognized by numerous courts in the Fifth Circuit, when plaintiffs allege common policies to meet an element of their claim, these common policies result in common questions which require overlapping witnesses and proof.

*Sanchez*, 2020 U.S. Dist. LEXIS 163011, at *8, 12; *Amalsi*, 2020 U.S. Dist. LEXIS 255809, at *10; *Afabor*, 2006 U.S. Dist. LEXIS 33045, at *13; *Battison*, 2001 U.S. Dist. LEXIS 6173, at *6–7; *Carter,* 175 F. Supp. 3d at 730; *Pouncie*, 2015 U.S. Dist. LEXIS 118233, at *9–10.

55.    Here, each Plaintiff has alleged multiple common policies including the overpopulation and understaffing of the Jail and failure to train and supervise which automatically entail common questions which require overlapping proof. This includes testimony from the policymaker (Sheriff Gonzalez), from a corporate representative of the Jail, from conditions and practices experts, and documentary evidence relating to each training policy, the TCJS reports, DOJ reports, each alleged comparator, and statistics throughout the Jail. For example, the excessive use of force reports and comparators point to the existence of the understaffing and overcrowding policy based on Sheriff Gonzalez's own admissions and TCJS findings that the understaffing and working mandatory overtime cause increased use of force by officers while also pointing to the inability to do observations properly, to provide medical care, and increased violence amongst detainees. Dkt. No. 13. Each of these items overlap and at this stage the mere allegation of this overlap is sufficient to establish proper joinder. *See* cases cited *supra* at ¶ 54. Each of these items at a minimum point to the existence of all five policies and failure to train and supervise claims that are the subject of the Complaint.

56.    As stated by numerous courts, it is far better to have the same evidence of the alleged policies, the policymakers' knowledge and deliberate indifference, and the common practices presented to one jury instead of having that "same evidence…be presented in numerous separate trials." *Amalsi*, 2020 U.S. Dist. LEXIS 255809, at *10; *see Crompton Greaves, Ltd. v. Shippers Stevedoring, Co.*, 776 F. Supp. 2d 375, 402 (S.D. Tex. 2011) (Rosenthal, J.) (Denying Rule 42(b) motion to sever trials because there would be an overlap in witnesses including

experts); *see also* cases cited *supra* at ¶ 54. Judge Ellison in denying Harris County's Motion to Sever held that "duplicative evidence of the alleged failure to train and unconstitutional practices would have to be presented at 27 separate trials." *Wagner*, 2024 U.S. Dist. LEXIS 68793, at *10–11. Similarly, Plaintiff would ask the Court to deny the Motion to Sever because Plaintiff has met the permissive joinder requirements and each factor weighs in favor of joinder because having 1 jury hear the evidence and 1 case for the Judge to make legal determinations is better than having to do 7 sets of discovery, 7 sets of motion practice, 7 sets of depositions, 7 different inspections, 7 different expert discovery, 7 pretrial hearings, 7 pretrial documents, and 7 different jury trials.

## V.    OBJECTION TO DOCUMENTS ATTACHED TO DEFENDANT'S MOTION

57.    As stated above, the joinder analysis is based on the Plaintiff's allegations not evidence. *See* cases and arguments *supra* Section IV(A). Plaintiff objects to each of the exhibits attached to the Motion to Sever as they are an impermissible attempt to make the joinder analysis an evidentiary decision. *Id.* Additionally, these pieces of evidence were not referred to in the Complaint and do not constitute public records to which judicial notice would be appropriate as being beyond dispute. *Id.* In fact, TCJS has even stated that the staffing documents were not always filled out correctly as alleged by Plaintiffs in the Complaint which makes them unreliable for judicial notice purposes. *Id.* Therefore, Plaintiff asks the Court to strike the documents attached to the Motion and make the decision on the Motion to Sever based on Plaintiff's pleadings.

## VI.    CONCLUSION

58.    Based on the foregoing, Plaintiff respectfully asks the Court to deny Defendant's Motion to Sever.

Respectfully submitted,

**BEN CRUMP LAW, PLLC**

*/s/Aaron Dekle*
Paul A. Grinke
State Bar No. 24032255
paul@bencrump.com
Aaron Dekle
State Bar No. 24100961
aaron@bencrump.com
5 Cowboys Way, Suite 300
Frisco, Texas 75034
(972) 942-0494 Telephone

**ATTORNEYS FOR ALL PLAINTIFFS**

**The Ghuneim Law Firm**

Wisam Ghuneim
Attorney to be Noticed
State Bar No. 24035702
wg@ghuneimlaw.com
4702 Spencer Hwy.
Pasadena, Texas 77505
Telephone: (281) 487-8929
Facsimile: (281) 487-0022
Designated E-Service Email Address:
eservice@ghuneimlaw.com

**ATTORNEYS FOR PLAINTIFFS**
**D'ALESSANDRO CHAVEZ-SANDOVAL AND**
**DAEVION YOUNG**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 28, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of this filing to all counsel of record.

*/s/ Aaron Dekle*
Aaron Dekle

PLAINTIFF'S RESPONSE TO MOTION TO SEVER                26