IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| D'ALESSANDRO CHAVEZ-SANDOVAL JANTRA PALMER, individually, and as next friend of Alan Kerber, deceased; MARGARET SIMON and JOSEPH SIMON, individually and as next friends of Victoria Simon, deceased, and G.L., a minor; KYLE RYKER; MICHAEL WALKER; DAEVION YOUNG; and ERIC RUSSELL; *Plaintiffs*, | § § § § § § § § § § § | |
| v. | § § | CIVIL ACTION NO. 4:24-cv-03072 |
| HARRIS COUNTY, TEXAS, *Defendant*. | § § § | |

**HARRIS COUNTY'S REPLY IN SUPPORT OF ITS MOTION TO STAY PENDING RULINGS ON MOTIONS TO DISMISS AND SEVER**

Harris County files this reply in support of its motion to stay discovery pending rulings on its motions to dismiss and sever, and requests the Court stay discovery in this case pending its rulings on same.

**Summary of the Argument**

Throughout their complaint and other filings before this Court, Plaintiffs display a determination to ignore, and refusal to acknowledge, how distinct their respective incidents are from each other and from the 70-plus comparators on whom they attempt to rely. As applied here, each Plaintiff's *Monell* claim can only succeed through demonstrating incidents that are both so numerous and so similar to each Plaintiff's incident to establish a pattern and practice. Plaintiffs' collectively relying on their diverse incidents along with the hodgepodge of incidents of the comparators illustrates exact the opposite.

Plaintiffs insist that, because of their reliance on an unwieldy disparate jumble of unrelated incidents, discovery would be the exact same for each Plaintiff if their claims were severed into separate suits. Plaintiffs provide no support for this argument. Severance of Plaintiffs' claims (assuming any remain after ruling on Harris County's motions to dismiss) would require Plaintiffs to properly narrow their respective pools of comparators to those whose incidents bear a meaningful relationship and similarity to their own. That would necessarily narrow the scope of discovery for each Plaintiff. Until the proper scope of discovery can be determined for each Plaintiff, Harris County asks this Court not to allow Plaintiffs to capitalize on their indiscriminate pile of comparators and engage in an unwieldy fishing expedition.

## Argument and Authorities

In each of its filings, Harris County has established that Plaintiffs bear the burden under *Monell* for a claim based on a pattern or practice to plead and prove that, for each of their incidents, there are enough similar incidents to establish the existence of a pattern or practice. *See, e.g.*, Doc. 17 at 6 (citing *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018); *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)), Doc. 55 at 8 (citing *Verastique v. City of Dallas*, 106 F.4th 427, 432 (5th Cir. 2024)), Doc. 63 at 6 (citing *Peña*, 879 F.3d at 620–23; *Peterson*, 588 F.3d at 847; *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). It is the similarity and numerosity of the other incidents that indicates the relevant policymaker was aware of the incidents and allowed them to occur. *See* Doc. 63 at 6 (citing *Peña*, 879 F.3d at 620–23; *Peterson*, 588 F.3d at 847; *Estate of Davis*, 406 F.3d at 383).

Harris County explained with specific examples how each Plaintiff's incident is dissimilar to the other Plaintiffs' incidents and, accordingly, each Plaintiff must rely on distinct sets of

2

incidents to establish a pattern and practice under *Monell*. *See, e.g.*, Docs. 17 at 12 n. 3, 55 at 13–14, 63 at 1–2. Harris County showed with examples how each Plaintiff's incident is dissimilar to many of the comparators, *see, e.g.*, Doc. 63 at 6–7, as Plaintiffs nonetheless continue to assert that every comparator is proof of every pattern and practice for every Plaintiff. *See, e.g.*, Doc. 74 at ¶ 36.

Each time, rather than addressing these arguments, Plaintiffs have avoided the issues by dismissing the arguments as conclusory. *See, e.g.*, Doc. 74 at ¶¶ 25, 40. Plaintiffs continue that pattern of avoidance and merely declare arguments are "conclusory" at each juncture. In its motion to stay, Harris County referenced its prior arguments that each Plaintiff's incident is dissimilar to those of the other Plaintiffs as well those of the numerous comparators on which they rely. Doc. 70 at 4–5. In response, Plaintiffs assert that Harris County "spends the majority of its Motion rearguing its conclusory statements raised in its Motions to Dismiss that Plaintiffs' allegations of their own and the similar incidents are unrelated without any support for that argument." Doc. 85 at ¶ 11. They assert that Harris County, "similar to [its] Motions to Dismiss and Motions to Sever, makes unsupported conclusory arguments that the comparators in the Complaint are completely unrelated to each other." *Id.* at ¶ 18.

Because Plaintiffs continue to insist that their incidents are similar enough to each other as well those of the comparators, they claim that "severance would require the same discovery on all of the comparators that Plaintiffs allege to determine if those comparators meet the similarity and specificity requirement in seven cases instead of having that information discovered one time in this case." *Id.* at ¶ 16. Plaintiffs also claim that "[s]everance would actually impose a greater burden on Defendant to have to answer seven sets of identical discovery instead of answering it one time." *See id.* at ¶ 17. Plaintiffs are arguing, then, that even if their claims were severed into

3

separate suits, each Plaintiff would continue to rely on the entire set of comparators for their claims. *Id.* at ¶¶16–17. As a result, they insist the scope of discovery would be the same for each Plaintiff and, therefore, duplicative. Because Plaintiffs refuse to acknowledge the flaw underlining the premise of their arguments, they confirm that their conclusions cannot stand.

It is not Harris County's intent to belabor the points it has already raised. To address the charge of having only made conclusory arguments by referencing arguments raised in other filings, however, Harris County provides the following summary to demonstrate why discovery could not be the same for all Plaintiffs' claims (assuming any such claims are not dismissed). Chavez complains that, on January 19, 2024, jailers used excessive force in the Joint Processing Center after he resisted a jailer attempting to move him, exchanged punches with the jailer, and was ultimately taken to a cell.[1] Doc. 13, ¶¶ 53–57. On October 2, 2022, Victoria Simon ("Simon") was found unresponsive in her cell at the Baker Street jail after she was placed there to detox from severe drug withdrawals upon booking. *Id.* at ¶¶ 27–29. On October 12, 2022, Alan Kerber ("Kerber") committed suicide by forcing a toothpaste tube down his throat while alone in his cell at the San Jacinto jail. *Id.* at ¶¶ 37–40. On August 7, 2023, Kyle Ryker ("Ryker") claims he was assaulted by other detainees inside a courthouse holding cell. *Id.* at ¶ 47. On February 16, 2024, two years after being booked into the jail, Michael Walker ("Walker") claims medical staff in the jail clinic gave him the wrong medication instead of the insulin he needed for his diabetes, which caused him to allegedly pass out and hit his head after returning to his cell at the Baker Street jail. *Id.* at ¶ 65. On March 6, 2024, Daevion Young ("Young") claims he was handcuffed when officers allegedly punched him, slammed his head into a wall, and left him in solitary confinement for 28 days at the San Jacinto jail. *Id.* at ¶¶ 70–71. On July 16, 2024, while waiting to be released from

---

[1]   *See* Doc. 63 at 1–2.

jail, Eric Russell ("Russell") claims a jailer turned off the lights in his pod upon a "signal" from a detainee and then allowed other detainees to severely beat him. *Id.* at ¶ 78. Despite Plaintiffs' insistence, these incidents in combination do not suggest any unifying pattern or practice.

For the comparators, it would be impossible with the briefing limitations to demonstrate how the incidents of each of the 70-plus comparators are dissimilar from those of each of the Plaintiffs. However, to illustrate the issue at hand Harris County provides various exemplars to highlight some of the stark differences between the plaintiffs and comparators.

Chavez's incident has no meaningful similarity to those of William Curtis Barrett, Nathan Henderson, or Natividad Flores. *Compare* Doc. 13, ¶¶ 323–32 (detainee with known mental health issues placed in solitary confinement and later assaulted by other detainee) *with id.* at ¶¶ 354–62 (detainee transferred to jail after being treated in hospital for stab wound; wound became infected after insufficient treatment and detainee passed away) *with id.* at ¶¶ 860–71 (jailers denied request by detainee with known diagnosis of epilepsy to have bottom bunk; detainee had seizure on top bunk, fell, and suffered injuries).[2]

Kerber's incident has no meaningful similarity to those of Adael Gonzalez Garcia, Nathan Henderson, or Natividad Flores. *Compare* Doc. 13, ¶¶ 745–55 (detainee beaten by officers while being escorted back from the clinic, which resulted in the officers being criminally charged) *with id.* at ¶¶ 354–62 (detainee transferred to jail after being treated in hospital for stab wound; wound became infected after insufficient treatment and inmate passed away) *with id.* at ¶¶ 860–71 (jailers denied request by detainee with known diagnosis of epilepsy to have bottom bunk; detainee had seizure on top bunk, fell, and suffered injuries).[3]

---

[2]   *See* Doc. 63 at 6–7.
[3]   *See* Doc. 64 at 7.

Russell's incident has no meaningful similarity to those of Bernard Lockhart, Loron Ernest Fisher, or Mark Anthony Mills. *Compare* Doc. 13, ¶¶ 821–23 (jailer dragged detainee to cell that lacked proper observation measures and then detainee was beaten by multiple officers) *with id.* at ¶¶ 893–900 (detainee with "sickle cell" taken to clinic after cell mates reported he was unwell, was observed in medical clinic, returned to a different cell, and later passed away) *with id.* at ¶¶ 1011–13 (detainee with unidentified history of medical issues passed away from unidentified medical emergency and "*likely* did not receive care and was *likely* suffering this emergency for a while" (emphasis added)).[4]

Ryker's incident has no meaningful similarity to those of Gary Wayne Smith, Israel Lizano Iglesias, or Kareem Jefferson. *Compare* Doc. 13, ¶¶ 374–79 (detainee with history of kidney disorder did not receive proper medical treatment and was found unresponsive one day) *with id.* at ¶¶ 644–49 (although no mention of any history of physical or mental issues, complaint that detainee was "not immediately screened", was later found alert but nonverbal, and passed away the next morning without identifying cause of death) *with id.* at ¶¶ 872–75 (detainee standing in line to be released from jail attacked by officer and then placed back in custody).[5]

Simon's incident has no meaningful similarity to those of Zachery Johnson, Mikayla Savage, or Adael Gonzalez Garcia. *Compare* Doc. 13, ¶¶ 406–14 (detainee attacked by other detainees and, days later, attacked by officers) *with id.* at ¶¶ 521–26 (detainee found on shower floor with "head split open" after alleged fall under suspicious circumstances) *with id.* at ¶¶ 745–52 (detainee being escorted back from medical clinic attacked by officers who were later criminally charged).[6]

---

[4] *See* Doc. 65 at 6–7.
[5] *See* Doc. 66 at 7.
[6] See Doc. 67 at 6–7.

Walker's incident has no meaningful similarity to those of Ramon Thomas, Jeremy Garrison, or Nathan Nichols. *Compare* Doc. 13, ¶¶ 343–51 (bipolar and schizophrenic detainee bullied by other detainees and dies of unidentified medical emergency) *with id.* at ¶¶ 391–401 (detainee refused order to return to cell and multiple officers attacked him) *with id.* at ¶¶ 562–64 (detainee attacked by other detainee and no officer monitored the surveillance or monitored and did not intervene).[7]

Young's incident has no meaningful similarity to those Deon Peterson, Dylan Perio, or Wallace Harris. *Compare* Doc. 13, ¶¶ 364–32 (detainee with history of asthma, diabetes, and heart disease taken to clinic after complaining about chest pain and later passed away "due to an issue with his heart") *with id.* at ¶¶ 531–34 (detainee with HIV did not receive required medication and experienced organ failure) *with id.* at ¶¶ 630–35 (detainee with history of hypertension found unresponsive with shallow breathing in his cell and later died of unidentified causes).[8]

Despite Plaintiffs' assertions to the contrary, there is nothing conclusory about Harris County's explanation and analysis, providing specific examples of how each Plaintiff's incident is dissimilar to not only those of the other Plaintiffs but also those of many of the comparators. Rather, Defendant Harris County exposes the flaws in Plaintiffs' attempts to rely on the disparate incidents of each Plaintiff and the 70-plus comparators.

Even when Plaintiffs did specifically identify a fraction of the comparators whose incidents they contend are similar enough to their own incident to establish a pattern and practice, no discernable pattern or practice emerges. Six of the Plaintiffs (Chavez, Simon, Russell, Ryker, Walker, and Young) contend their incidents are sufficiently similar to that of Evan Ermayne Lee,

---

[7] *See* Doc. 68 at 6–7.
[8] *See* Doc. 69 at 6–7.

7

who Plaintiffs allege did not receive his medication for his mental illnesses, was attacked by another detainee, and continued to suffer pain because his injuries were not properly diagnosed.[9] Doc. 13 at ¶¶ 313–20; Doc. 45 at ¶ 41; Doc. 47 at ¶ 29; Doc. 48 at ¶ 28; Doc. 49 at ¶ 29; Doc. 50 at ¶ 42; Doc. 51 at ¶ 28. Five Plaintiffs (Chavez, Simon, Russell, Walker, and Young) contend their incidents are sufficiently similar to that of Jaquaree Simmons, which involved jailers who were criminally charged for beating him repeatedly and then falsifying reports. Doc. 13 at ¶¶ 701–28; Doc. 45 at ¶¶ 29, 41, 49; Doc. 47 at ¶ 29; Doc. 49 at ¶ 29; Doc. 50 at ¶¶ 29, 42, 50; Doc. 51 at ¶ 41. The same five Plaintiffs contend their incidents are also sufficiently similar to that of Jacoby Pillow, who Plaintiffs allege had an "altercation" with jailers, suffered significant blunt force as a result, and was only cursorily reviewed by medical staff. Doc. 13 at ¶¶ 289–97; Doc. 45 at ¶¶ 29, 41, 49; Doc. 47 at ¶ 29; Doc. 49 at ¶ 29; Doc. 50 at ¶¶ 29, 42, 50; Doc. 51 at ¶ 41. There is no through-line reflecting any similarity between these comparator's incidents and those of all five or six Plaintiffs who rely on them.

Plaintiffs' complaint and their arguments before this Court demonstrate that: (1) Plaintiffs' incidents are distinct from each other and do not demonstrate any common pattern or practice; (2) the incidents for the 70-plus purported comparators are too dissimilar to collectively establish any pattern or practice; and (3) the incidents for each of the 70-plus comparators is dissimilar from the incident of at least one Plaintiff, and usually the incidents of several Plaintiffs. Indeed, even assuming there are subsets of comparator incidents that could establish a pattern or practice for each Plaintiff, no Plaintiff actually identifies a set that is sufficiently numerous and similar to their own incident to give rise to any pattern and practice for any *Monell* claim.

---

[9]    Doc. 55 at 16.

This necessarily means that, once properly severed, each Plaintiff must narrow the scope of comparators to specifically identify those whose incidents are sufficiently similar to his or her own incident. No Plaintiff can obtain discovery concerning every comparator. Information concerning the incidents of comparators with no discernable semblance to any Plaintiff's incident are not relevant to that Plaintiff's claim. Fed. R. Civ. P. 26(b)(1).

Even when the incident for a comparator is similar enough to a Plaintiff's incident, how they are similar will also be relevant for purposes of discovery. For example, in their responses to the motions to sever, every Plaintiff alleged that their incident is similar to that of Jacoby Pillow. *See, e.g.*, Doc. 74 at ¶ 40. "The case of Jacoby Pillow is another example of how the comparators apply to each case. Mr. Pillow was subjected to excessive force by numerous officers, did not receive proper medical evaluation, and then was dragged into a cell and left there without proper observation until he was found dead." *Id.* (citing Doc. 13 ¶¶ 288–99). Even assuming that the failure to observe Mr. Pillow in his cell is sufficiently similar to Simon's incident, this does not mean that Simon would be entitled to discovery concerning the use of force against Mr. Pillow since there are no allegations of any force used against Simon.

As Plaintiffs argue, "Courts addressing discovery-related disputes in cases involving *Monell* claims routinely recognize that such claims often require a broad and substantial amount of discovery that would not be involved if the plaintiff had sued only the individuals directly involved in the alleged deprivation of rights . . . ." *Estevis v. City of Laredo*, No. 5:22-CV-22, 2023 U.S. Dist. LEXIS 233845, at *6–7 (S.D. Tex. 2023) (internal quotation omitted). This breadth is not unlimited, however. *Brown v. City of Alexandria*, No. 1:20-CV-00541, 2022 U.S. Dist. LEXIS 57885, at *12 (W.D. La. 2022). "[T]he United States Court of Appeals for the Fifth Circuit has been clear that constraints are warranted." *Id.*

Discovery must be relevant to establishing prior incidents that are sufficiently numerous and similar to a plaintiff's incident. *Id.* at *12–13. In *Brown*, the trial court denied discovery requests about other individuals because they bore "no relevance to [the plaintiff's] claims" and because they "do not relate to excessive force incidents [like plaintiff's], or investigation of an excessive force incident." *Id.* at *17. The court struck another request because the information would amount to an isolated incident, which would not support his claim. *Id.* at *18. For other, broader requests, the court limited the temporal and subject-matter scope of the requests to fit the allegations of the plaintiff's incident. *Id.* at *21, *23.

In contrast, Plaintiffs' complaint is designed to attempt to avoid these limitations placed on discovery in *Monell* claims. The complaint is drafted so broadly as to give them carte blanche on any documents and other information held by Harris County. This is borne out by the discovery Plaintiffs propounded on Harris County.[10]

Despite Plaintiffs' protestations, before discovery can be conducted, it is essential to understand how many claims remain (following rulings on each Motion to Dismiss), how many individual suits there will be, and the alleged patterns and practices supported by each Plaintiff's incident and sufficiently numerous and similar comparator incidents. For this reason and for the other reasons asserted in Harris County's motion to stay, a stay of discovery is essential until this Court rules on Harris County's motions to dismiss and the motions to sever.

---

10    This issue is developed further in Harris County's Motion for Protective Order.

**Conclusion**

Harris County asks this Court to grant its motion and stay discovery in this case pending ruling on Harris County's motions to dismiss (Docs. 17–23) and motions to sever (Docs. 63–69) Plaintiffs' claims.

                                              Respectfully submitted,

                                              FELDMAN & FELDMAN, P.C.

Date: May 14, 2025                             */s/ Cris Feldman*
                                              Cris Feldman
                                              Attorney in charge
                                              Federal Bar No. 712459
                                              State Bar No. 24012613
                                              cris.feldman@feldman.law
                                              3355 West Alabama Street, Suite 1220
                                              Houston, Texas 77098
                                              Phone: (713) 986-9471
                                              Facsimile: (713) 986-9472

                                              *Attorneys for Harris County, Texas*

OF COUNSEL:
Fernando De Leon
Federal Bar No. 32395
State Bar No. 24025325
fernando.deleon@feldman.law
Derek D. Bauman
Federal Bar No. 814346
State Bar No. 24044475
derek.bauman@feldman.law
Feldman & Feldman, P.C.
3355 West Alabama Street, Suite 1220
Houston, Texas 77098
Phone: (713) 986-9471
Facsimile: (713) 986-9472

**Certificate of Service**

I certify that the above and foregoing documents was electronically filed with the Clerk of the court using the CM/ECF system, which will send notification to the attorney(s) of record listed below:

Paul A. Grinke
Aaron Dekle
BEN CRUMP LAW, PLLC
5 Cowboys Way, Suite 300
Frisco, Texas 75034
paul@bencrump.com
aaron@bencrump.com

Wisam Ghuneim
THE GHUNEIM LAW FIRM
4702 Spencer Hwy.
Pasadena, Texas 77505
wg@hhuneimlaw.com
eservice@ghuneimlaw.com

*Attorneys for Plaintiffs*

                                            */s/ Derek D. Bauman*
                                            Derek D. Bauman